UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

07 249 S

SUBARU OF NEW ENGLAND, INC.,

Plaintiff,

v.

BALD HILL REALTY CO.
d/b/a BALD HILL SUBARU,

Defendant.

C.A. No. ________

# COMPLAINT

## Introduction

1. Through this action, the plaintiff, Subaru of New England, Inc. ("SNE"), seeks a judgment declaring as follows:

a. that Bald Hill Realty Co. d/b/a Bald Hill Subaru ("Bald Hill") materially breached its Subaru Dealer Agreement with SNE;

b. that SNE's notice of termination of the Subaru Dealer Agreement between Bald Hill and SNE is lawful and proper; and

c. that SNE may lawfully terminate Bald Hill's Subaru Dealer Agreement and Bald Hill's franchise effective September 10, 2007.

## Parties

2. The Plaintiff, SNE, is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Norwood, Massachusetts. SNE is the New England distributor of Subaru products and a "distributor" as defined under R.I. Gen. Laws § 31-5.1-1(2) because SNE "sells or distributes any new motor vehicle to new motor

vehicles dealers" in Rhode Island. SNE is licensed as a "distributor" by Rhode Island. SNE is not a "manufacturer" under R.I. Gen. Laws § 31-5.1-1(8) as it does not manufacture, assemble or import new motor vehicles and it is not controlled by anyone who does so.

3. The Defendant, Bald Hill, on information and belief, is a corporation organized and existing under the laws of Rhode Island with a principal place of business in West Warwick, Rhode Island. Prior to its forthcoming termination, Bald Hill engaged in business as an authorized Subaru dealer. Bald Hill is a "new motor vehicle dealer" as that term is defined in R.I. Gen. Laws § 31-5.1-1(10).

## Jurisdiction and Venue

4. The jurisdiction of this Court over the Defendant is lawful and proper pursuant to 28 U.S.C. § 1332 where there exists complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs. Upon termination, all of Bald Hill's rights in the Subaru Dealer Agreement will revert to SNE, the value of which exceeds $75,000. Venue in this judicial district is lawful and proper pursuant to 28 U.S.C. § 1391(a) and (c) where the Defendant is incorporated and does business in this district. These parties were previously before this Court and the Rhode Island Dealer Hearing Board of the Rhode Island Division of Motor Vehicles in 1999. The 1999 action involved Bald Hill's material breaches of its prior Subaru Dealer Agreement and SNE's noticed intention to terminate that prior agreement. The parties resolved that case.

## Facts

5. Bald Hill has been an authorized Subaru dealer for many years. Its most recent Subaru Dealer Agreement with SNE, as amended, has a term of April 1, 2004 through March 31, 2009 (the "Agreement").

6. Bald Hill's performance in selling new Subaru motor vehicles has been poor. SNE provided Bald Hill with suggestions over the years regarding its substandard management on many occasions, which Bald Hill did not follow.

7. Bald Hill refused to act on SNE's suggestions and continued to operate in breach of the material sales performance and personnel provisions of the Agreement, resulting in no significant improvement in Bald Hill's new Subaru sales.

8. SNE provided Bald Hill with a reasonable opportunity to cure its poor sales performance, yet Bald Hill failed to do so

9. On November 7, 2006, SNE met with Bald Hill and reviewed Bald Hill's performance in detail. Bald Hill offered no plan to improve its poor performance.

10. By letter dated November 14, 2006, SNE sent Bald Hill notice of its failure of performance (the "Notice"). The Notice detailed Bald Hill's poor sales performance. For example and without limitation, the Notice detailed that Bald Hill's new Subaru sales were down in October 2006 (46.9%) compared to October 2005 while the District in which Bald Hill is grouped was down only (20.1%) and the Region was down only (7.8%); it also detailed among other things that Bald Hill's new Subaru sales were down October 2006 year to date by (30.6%) while the District was down only (10.6%) and the Region was down only (5.5%).

11. Bald Hill received the Notice by certified mail on November 17, 2006.

12. In the Notice, SNE advised Bald Hill that, unless Bald Hill corrected its deficiencies on or before May 31, 2007, SNE would send Bald Hill Notice of Termination of the Agreement and Subaru franchise. SNE specifically advised Bald Hill that, in order to cure its deficiencies, Bald Hill must sell two hundred eighty-eight (288) new Subaru motor vehicles

between December 1, 2006 and May 31, 2007 (the "Monitoring Period") pursuant to an enclosed Sales Potential Analysis for its Area of Responsibility ("AOR"), among other things.

13. The Sales Potential Analysis is a worksheet that established a fair and reasonable annual sales objective for Bald Hill based on the actual new Subaru sales potential in Bald Hill's AOR using a segmented retail registration analysis. SNE also "seasonalized" the sales objective, by month, factoring in the average percent of the total annual new Subaru sales by all the Subaru dealers in New England each month represented as a percent of the total.

14. After SNE sent the Notice, SNE and Bald Hill representatives discussed the potential termination on various occasions. Bald Hill advised SNE that it opposes any effort by SNE to terminate its Agreement and Subaru franchise.

15. Bald Hill did not sell 288 new Subaru vehicles during the Monitoring Period. Indeed, Bald Hill's sales performance actually worsened during the Monitoring Period.

16. Bald Hill only accomplished 49% of its objective during the Monitoring Period. Not only did Bald Hill not reach those numbers, it sold (19%) fewer new Subarus between December and May than it did during the same period last year.

17. In contrast, Bald Hill's used retail sales increased 8% between December 2006 and April 2007.

18. During the first three months of 2007, Subaru penetration in Bald Hill's AOR was the lowest among all active Subaru dealer AORs in New England; Subaru penetration in Bald Hill's AOR has declined more than any other dealer in New England; and, Bald Hill has experienced more "Lost Business" than any other active Subaru dealer in New England.

19. Through March of 2007, Bald Hill's new Subaru sales rank Bald Hill 44th among all Subaru dealers located in New England while its AOR ranks 6th in sales potential based on total retail industry registrations.

20. In Paragraph 9.1 of the Standard Provisions to the Agreement, Bald Hill, among other things, agreed to "...use its best efforts to aggressively, actively, and effectively promote the sale of Subaru Products in the Area of Responsibility through regular contacts with existing and prospective owners and users of Subaru Products, including participation in promotional events in accordance with reasonable Distributor Directives." This provision is reasonable and material.

21. In Paragraph 10.2 of the Standard Provisions to the Agreement, Bald Hill further agreed "to effectively sell Subaru Products to customers located in [its AOR]" and that SNE would evaluate Bald Hill's performance of its sales obligations "on the basis of such reasonable criteria as Distributor may develop from time to time, including, but not limited to, those reasonable sales objectives that Distributor may establish and a comparison of Dealer's sales performance with other Subaru dealers." This provision is reasonable and material.

22. In Addendum I to the Agreement, Bald Hill also agreed to the following:

**1. Evaluation of Dealer's Performance** DEALER acknowledges the importance of its overall performance in relation to the purposes and objectives of this Agreement. SNE will periodically evaluate DEALER'S performance of its responsibilities in the areas of sales, service, parts and customer satisfaction, based upon such reasonable criteria as SNE may establish from time to time. SNE agrees to review all such evaluations with DEALER and will provide DEALER a copy thereof. If upon evaluation of DEALER'S performance SNE determines DEALER'S performance to be unsatisfactory, DEALER agrees to take prompt action to improve its performance and, if requested by SNE, to notify SNE in writing of its detailed plans and timetables for accomplishing those improvements.

A. **SALES PERFORMANCE EVALUATION**
DEALER agrees to effectively sell Subaru Products to customers located in its Area of Responsibility. DEALER'S performance of its sales

obligations, without regard to its Planning Volume, will be evaluated by SNE on the basis of such reasonable criteria as SNE may develop from time to time and communicate in advance to DEALER, including, but not limited to, those reasonable sales objectives that SNE may establish and a comparison of DEALER'S sales performance with other Subaru dealers located in the State DEALER is located or throughout New England or in other geographic areas such as DEALER'S district or in similar size markets to DEALER'S.

B. **SERVICE PERFORMANCE EVALUATION**

SNE will evaluate DEALER'S service performance in such areas as, without limitation, warranty management, compliance with the Subaru Warranty Policy and Procedures Manual, service management, service operating procedures, service staffing and training, administration, service facilities and equipment, new vehicle pre-delivery service, customer handling and customer retention.

C. **PARTS PERFORMANCE EVALUATION**

SNE will evaluate DEALER'S parts performance in such areas as, without limitation, general parts management, parts operating procedures, parts staffing and training, parts facilities, parts inventory management, parts sales, accessory sales, parts merchandising and parts availability to customers.

D. **CUSTOMER SATISFACTION PERFORMANCE EVALUATION**

SNE will evaluate DEALER'S performance of its responsibilities in the area of customer satisfaction based on the following considerations:

1. DEALER will be provided with customer satisfaction reports or such other equivalent data as will permit DEALER to assess its performance and maintain the highest level of customer satisfaction. DEALER agrees to review with its employees on a regular basis the results of the customer satisfaction reports or other data it receives.

2. DEALER agrees to develop, implement and review with SNE specific action plans for improving results in the event that DEALER is below the average customer satisfaction levels for other Subaru dealers in such areas that SNE believes are a reasonable basis for comparison. DEALER shall respond on a timely basis to requests from SNE to take action on unsatisfactory customer satisfaction matters and to commit necessary resources to remedy deficiencies reasonably specified by SNE, and DEALER shall remedy those deficiencies. SNE reserves the right to establish reasonable, uniform criteria to be used to evaluate DEALER.

E. TERMINATION FOR FAILURE OF PERFORMANCE
If upon evaluation of DEALER'S performance pursuant to paragraphs 1(A)-(D) herein, SNE concludes that DEALER has failed to perform adequately its sales, service, parts or customer satisfaction responsibilities or to provide dealership facilities which meet or exceed SNE Standards, SNE shall notify DEALER in writing of such failure(s) and will endeavor to review promptly with DEALER the nature and extent of such failure(s). DEALER will be granted a time period as may be reasonable or as required by law to correct such failure(s). If DEALER fails or refuses to correct such failure(s), or comply with any applicable law regarding a time period towards making substantial progress towards remedying such failure(s), SNE may terminate the Agreement upon such notice as may be required by law.

This provision is reasonable and material.

23. Bald Hill further agreed to employ six (6) sales persons exclusively dedicated to the Subaru dealership in the Agreement, Addendum I, Paragraph 5. This provision is reasonable and material.

24. Bald Hill did not make any progress toward achieving its minimum new Subaru sales requirement during the Monitoring Period because Bald Hill did not make reasonable efforts to do so. Without limitation, Bald Hill: (a) did not increase its new car advertising; (b) did not increase its sales force; and (c) did not increase its new Subaru inventory to bring it in line with its monthly sales objectives during the Monitoring Period.

25. During the Monitoring Period, Bald Hill did not (a) maintain an adequate supply of new Subarus; (b) employ an adequate number of salespeople; or (c) spend an adequate amount for new vehicle advertising. Among other things and without limitation, Bald Hill did not even employ the minimum of six (6) salespeople it agreed to provide in the Agreement. Further, Bald Hill's apparent increased focus on used retail sales was probably also a factor in its declining new sales performance.

26. Bald Hill did not use its "…best efforts to aggressively, actively, and effectively promote the sale of Subaru products…" as required by its Agreement. Bald Hill did not take any of the basic steps needed to improve in this critical area of new Subaru sales during the Monitoring Period. Further, Bald Hill's service customer satisfaction score decreased.

27. Bald Hill did not "effectively sell Subaru Products to customers located in [its AOR]."

28. Bald Hill failed to comply with provisions of the Agreement which are reasonable and of material significance to the Agreement and franchise relationship.

29. Although SNE provided Bald Hill with a reasonable opportunity to comply with its reasonable performance criteria, Bald Hill did not demonstrate substantial progress towards compliance during the Monitoring Period.

30. By letter dated June 6, 2007, SNE provided Bald Hill Notice of Termination of Subaru Dealer Agreement and Franchise ("Termination Notice"). In the Termination Notice, SNE advised that it was terminating Bald Hill's Agreement and Subaru franchise effective September 10, 2007.

31. Bald Hill received the Termination Notice by certified mail on June 7, 2007.

**Count One (Declaratory Judgment)**

32. SNE repeats and realleges as if fully set forth herein paragraphs 1 through 31 above.

33. An actual case and controversy also exists between SNE and Bald Hill as to whether Bald Hill acted in violation of its contractual obligations. An actual case and controversy exists between SNE and Bald Hill as to whether SNE's decision to terminate Bald

Hill's Agreement and Subaru franchise is lawful and proper and whether Bald Hill's Agreement and franchise may lawfully be terminated effective September 10, 2007.

34. SNE is entitled to a judgment declaring as follows:

a. that Bald Hill Realty Co. d/b/a Bald Hill Subaru ("Bald Hill") materially breached its Agreement with SNE;

b. that SNE's notice of termination of the Agreement between Bald Hill and SNE is lawful and proper; and

c. that SNE may lawfully terminate the Agreement between Bald Hill and SNE and Bald Hill's franchise effective September 10, 2007.

**Prayer for Relief**

WHEREFORE, the Plaintiff, Subaru of New England, Inc., respectfully requests that the Court grant it the following relief:

a. enter a declaratory judgment in its favor as requested in Count One;

b. award SNE its attorneys' fees and costs; and

c. grant such other and further relief as the Court deems just and proper.

SUBARU OF NEW ENGLAND, INC.,

By its attorneys,

Mitchell R. Edwards (Attorney No. 6942)
Hinckley, Allen & Snyder
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)
medwards@haslaw.com

OF COUNSEL:

Howard M. Cooper
Heidi A. Nadel
TODD & WELD, LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626
(*pro hac* application to be filed)

Kathleen M. Genova
SUBARU OF NEW ENGLAND, INC.
95 Morse Street
Norwood, MA 02062
(781) 255-6395
(*pro hac* application to be filed)

June 29, 2007