UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SUBARU OF NEW ENGLAND, INC., Plaintiff, | ) |
| v. | ) C.A. No. 07-249-S-DLM |
| BALD HILL REALTY CO. d/b/a BALD HILL SUBARU, Defendant. | ) |

**PLAINTIFF SUBARU OF NEW ENGLAND, INC.'S OBJECTION TO DEFENDANT BALD HILL SUBARU'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR STAY**

Plaintiff Subaru of New England, Inc. ("SNE") hereby objects to Defendant Bald Hill Subaru's motion to dismiss or, in the alternative, motion for stay. In support of its objection, SNE relies upon the accompanying memorandum of law and Affidavit of Henry J. Burbank.

SNE respectfully requests that the Court deny Bald Hill Subaru's motion to dismiss or, in the alternative, motion for stay.

Respectfully submitted,

SUBARU OF NEW ENGLAND, INC.

By its attorneys,

/s/ Mitchell R. Edwards
Brent R. Canning (Attorney No. 5546)
Mitchell R. Edwards (Attorney No. 6942)
Hinckley, Allen & Snyder
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)
medwards@haslaw.com

OF COUNSEL:

Howard M. Cooper
Heidi A. Nadel
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626
Fax: (617) 227-5777
hcooper@toddweld.com
hnadel@toddweld.com
(admitted *pro hac vice*)

August 22, 2007

**CERTIFICATION**

I hereby certify that on August 22, 2007, a copy of the foregoing Objection to the Motion to Dismiss or in the alternative, Motion for Stay was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing thorough the Court's CM/ECF system.

Michael J. McEntee, Esq.
915 Tollgate Road
Warwick, RI 02886

/s/ Mitchell R. Edwards
Mitchell R. Edwards (#6942)

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SUBARU OF NEW ENGLAND, INC., Plaintiff, v. BALD HILL REALTY CO. d/b/a BALD HILL SUBARU, Defendant. | C.A. No. 07-249-S-DLM |

**SUBARU OF NEW ENGLAND, INC.'S OPPOSITION TO DEFENDANT BALD HILL SUBARU'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR STAY**

Plaintiff Subaru of New England, Inc. ("SNE") hereby submits this Opposition to the Motion to Dismiss or, in the alternative, Motion for Stay, submitted by Defendant Bald Hill Realty Co. d/b/a Bald Hill Subaru ("Bald Hill").

## INTRODUCTION

This lawsuit followed months of discussions between SNE and Bald Hill about Bald Hill's dismal and worsening sales performance; a detailed notice from SNE to Bald Hill regarding its specific sales deficiencies; a six-month cure period for Bald Hill to correct those deficiencies; and a formal notice of termination of Bald Hill's Subaru Dealership and franchise after Bald Hill failed to do so. There was no race to the courthouse and no positioning by SNE for a favorable forum. SNE did not, in fact, file suit until almost one month after it provided notice of termination to Bald Hill and when it did file, SNE openly disclosed that fact to Bald Hill.

All the while, Bald Hill did nothing. It did not take reasonable steps to cure its sales deficiencies. It did not file an action challenging termination. Indeed, Bald Hill waited until the eve of its deadline to answer SNE's Complaint to file a complaint with the Rhode Island Dealer and Hearing Board ("the Board") asking the Board to halt termination, to impose sanctions on SNE, and, remarkably, to revoke SNE's license to distribute Subaru automobiles in the state of Rhode Island. SNE learned of Bald Hill's later-filed complaint only when Bald Hill attached it as an exhibit to its even-later-filed Motion to Dismiss in this case.

SNE filed this case as a straightforward declaratory judgment action and has refrained from asserting a damages claim in an effort to streamline and expedite this case and to avoid compounding the difficulty Bald Hill's owners might experience closing their Subaru business upon termination of Bald Hill's Subaru Dealer Agreement and franchise. Bald Hill saw this as an opportunity and filed a Motion to Dismiss, arguing (i) (in a misstatement of the law) that SNE failed to satisfy the amount in controversy requirement because it did not seek damages or allege pecuniary harm to itself; and (ii) (in a misapplication of the law) that the case should be dismissed under the abstention standards applicable to declaratory judgment claims. Neither argument has merit.

*First*, the amount in controversy requirement is determined in a declaratory judgment action by the value of the "object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347-48 (1977). The object of the litigation in this case, the contract rights that will revert to SNE upon termination of Bald Hill's Subaru Dealer Agreement and franchise, include the right to operate a Subaru dealership in the largest area of responsibility in Rhode Island and one of the largest markets in New England, and to use Subaru's trademarks and trade name, among other things. As alleged in the Complaint and described in the Affidavit

of Henry J. Burbank, SNE's Vice President Market Development, filed herewith, these rights are worth well in excess of $75,000.

*Second*, even applying the discretionary abstention principles set forth in *Wilton v. Seven Falls Company*, 515 U.S. 277 (1995), there is no basis for the Court to abstain from exercising its jurisdiction in this case because: (i) there is no pending state court or administrative proceeding now that SNE has removed the Board proceeding to this Court; (ii) the Board lacks jurisdiction to adjudicate the parties' dispute or to grant them the relief they seek; (iii) this Court has substantial expertise in Rhode Island law, and is well-suited to resolve the straightforward contract and statutory construction issues raised in this case and there is little risk of "piecemeal litigation" or inconsistent results even if the Board proceeding is remanded; and (iv) Bald Hill's Board proceeding is an obvious reactionary and contrived, after-the-fact maneuver to avoid litigating before this Court and to obtain what Bald Hill perceives as a more favorable forum to it.

The Motion to Dismiss should be denied.

## BACKGROUND

### Facts Leading to SNE's Termination of Bald Hill

***i. Parties.***

SNE is a corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business in Norwood, Massachusetts. SNE is the New England distributor of Subaru products and a "distributor" as defined under R.I. Gen. Laws § 31-5.1-1(2) because SNE "sells or distributes any new motor vehicle to new motor vehicles dealers" in Rhode Island. SNE is licensed as a "distributor" by Rhode Island. SNE is not a "manufacturer"

under R.I. Gen. Laws § 31-5.1-1(8) as it does not manufacture, assemble or import new motor vehicles and it is not controlled by anyone who does so.

Bald Hill, on information and belief, is a corporation organized under the laws of Rhode Island with a principal place of business in West Warwick, Rhode Island. Until its forthcoming termination, Bald Hill engaged in business as an authorized Subaru dealer. Bald Hill is a "new motor vehicle dealer" as that term is defined in R.I. Gen. Laws § 31-5.1-1(10).

***ii. The Parties' Rights and Obligations.***

Bald Hill has been an authorized Subaru dealer for many years pursuant to successive Subaru Dealer Agreements with SNE. Its most recent Subaru Dealer Agreement with SNE, as amended, has a term of April 1, 2004 through March 31, 2009 (the "Agreement") (A copy of the Agreement with all addenda and attachments is attached as Exhibit A to the Affidavit of Henry J. Burbank ("Burbank Aff."), filed herewith). The Agreement provides, in pertinent part:

- Bald Hill Subaru has responsibility for the promotion, sale and service of Subaru products within a specified area of responsibility ("AOR"); it is an area containing zip codes including and surrounding Warwick, Rhode Island. Burbank Aff. at Exh. A at ¶ 4.

- Bald Hill agreed that its sales performance represented a material and significant element of its relationship with SNE, and agreed that it would be subject to certain performance standards. Burbank Aff. at Exh. A, Addendum I at ¶ 1.

- SNE would evaluate Bald Hill's performance of its sales obligations "on the basis of such reasonable criteria as SNE may develop from time to time and communicate in advance to DEALER, including, but not limited to, those reasonable sales objectives that SNE may establish and a comparison of Dealer's sales performance with other Subaru dealers" in the same state or region. Burbank Aff. at Exh. A, Addendum I at ¶ 1(A).

- SNE agreed that if Bald Hill failed to perform adequately in its sales, service, parts or customer satisfaction responsibilities, it would provide Bald Hill with written notice and an opportunity to cure as may be reasonable or required by law. Burbank Aff. at Exh. A, Addendum I at ¶ 1(E).

- Bald Hill agreed that if it failed, after notice, to correct deficiencies identified by SNE in a written notice, SNE may terminate the Agreement upon notice as may be required by law. Burbank Aff. at Exh. A., Addendum I at ¶ 1(E).

- Bald Hill further agreed to employ six (6) sales persons and a New Vehicle Service Manager, all exclusively dedicated to the Subaru dealership. Burbank Aff. at Exh. A, Addendum I, ¶ 5.

SNE and Bald Hill further agreed to incorporate certain of SOA's Standard Provisions ("Standard Provisions") into the Agreement (A copy of the Standard Provisions is attached to the Burbank Aff. as Exhibit B). The Standard Provisions provide, in relevant part, as follows:

- Bald Hill agreed to "use its best efforts to aggressively, actively, and effectively promote the sale of Subaru Products in the Area of Responsibility through regular contacts with existing and prospective owners and users of Subaru Products, including participation in promotional events in accordance with reasonable Distributor Directives." Burbank Aff. at Exh. B at ¶ 9.1

- Bald Hill further agreed "to effectively sell Subaru Products to customers located in [its AOR]." Burbank Aff. at Exh. B. at ¶ 10.2.

- SNE would evaluate Bald Hill's performance of its sales obligations "on the basis of such reasonable criteria as Distributor may develop from time to time, including, but not limited to, those reasonable sales objectives that Distributor may establish and a comparison of Dealer's sales performance with other Subaru dealers." Burbank Aff. at Exh. B at ¶ 10.2.[1]

Bald Hill also acquired a limited right to use the Subaru trade name and trademarks in its business activities, and agreed through the Standard Provisions to "safeguard and promote the reputation of Subaru ... and all other Subaru distributors and dealers", Burbank Aff. at Exh. B at ¶ 4.1, and to avoid "abusing, misusing, discrediting or otherwise impairing the name or reputation" of Subaru, SNE, or of "any Marks or of any Subaru Products," Burbank Aff. at Exh. B at ¶ 17.1.16.

---

[1] Paragraph 17 of the Standard Provisions also speaks to termination for cause by SNE for certain enumerated reasons. Burbank Aff. at Exh. B, ¶17. Paragraph 17.1.24(a) relates to Bald Hill's failure to fulfill its responsibilities with respect to sale of Subaru products; paragraph 17.1.24(h) relates to termination for Bald Hill's failure to fulfill its responsibilities with respect to performance under the Agreement.

### *iii. Bald Hill's Dismal and Down Trending Sales Performance.*

Bald Hill's performance in selling new Subaru motor vehicles has been poor. Over the course of the Agreement, Bald Hill failed to satisfy the reasonable performance criteria required by the Agreement as set by SNE. Statistics maintained by SNE demonstrate that Bald Hill has been consistently among the worst, or the worst, performer of any dealer authorized by SNE to sell Subaru Products in New England:

| | | | |
|---|---|---|---|
| **2004** | Bald Hill's Penetration Ranking was 72nd among 74 dealers, and last among active dealers.[2] | Bald Hill ranked 33rd in sales among all Subaru dealers located in New England, while its market was the 7th largest among all active dealers in New England and the largest in Rhode Island. | Bald Hill had 308 units of Annual Lost Business, or the most lost units among all active Dealers in New England.[3] |
| **2005** | Bald Hill's Penetration Ranking was 68th among 74 dealers, ranking it last among active dealer AORs, and last in Rhode Island. | Bald Hill ranked 31st in sales among all Subaru dealers located in New England, while its market was the 7th largest among all active Dealers in New England and the largest in Rhode Island. | Bald Hill had 288 units of Annual Lost Business or the 3rd most lost units among all active Dealers located in New England, and most in Rhode Island. |

SNE provided Bald Hill with suggestions over the years regarding its substandard management and to improve its dismal sales performance on many occasions, but Bald Hill refused to act on SNE's suggestions and continued to operate in breach of the material sales performance and personnel provisions of the Agreement, resulting in no significant improvement in Bald Hill's new Subaru sales. By 2006, Bald Hill's downward spiraling performance was too significant to ignore. For example:

[2] Subaru Penetration refers to the number of new Subaru vehicle retail registrations in a market as a percentage of all new motor vehicle retail registrations in that same market in a given time period.

[3] Lost Business is determined by calculating the amount of Subaru retail registrations that would have been achieved had a market performed at an average Subaru penetration level minus the actual new Subaru retail registrations during a given time period.

- Bald Hill's sales of new Subarus were down **46.9%** for October 2006 compared to October 2005, while the District sales were down 20.1% and Region sales were down only 7.8% for the same period.

- Bald Hill's sales of new Subarus were down **30.6%** for the period January 1, 2006 through October 2006 when compared to the same period in 2005, while District sales were down 10.6% and Region sales were down only 5.5%.

***iv. SNE Provides Notice of Failure of Performance to Bald Hill and Institutes a Six-Month Cure Period.***

Faced with Bald Hill's bleak and worsening performance, particularly in the vital area of new Subaru sales, on November 7, 2006, SNE met with Bald Hill and reviewed Bald Hill's performance in detail. Following the meeting, on November 14, 2006, SNE provided to Bald Hill notice of failure of performance in which SNE detailed Bald Hill's poor sales performance, spelled out the sales objectives Bald Hill should meet to correct its sales deficiencies, and gave Bald Hill more than six months to do so. In the notice of failure of performance, SNE specifically advised that unless Bald Hill corrected its deficiencies on or before May 31, 2007, SNE would send Bald Hill Notice of Termination of its Subaru Dealer Agreement and franchise.

SNE continued to offer to meet with Bald Hill and to provide suggestions as to how to improve its performance. Bald Hill chose not to follow any of SNE's suggestions. Bald Hill also did not use the six-month cure period to make a reasonable effort to correct its sales deficiencies. For example, SNE advised Bald Hill that, in order to cure its sales deficiencies, Bald Hill was required to sell two hundred eighty-eight (288) new Subaru motor vehicles during the cure period pursuant to fair and reasonable sales objectives for Bald Hill's AOR. Bald Hill did not make any progress toward achieving this requirement because it did not make reasonable efforts to do so. Without limitation, Bald Hill: (a) did not increase its new car advertising; (b)

did not increase its sales force;[4] and (c) did not increase its new Subaru inventory to bring it in line with its monthly sales objectives during the cure period. Bald Hill's sales of new Subarus in fact declined during the cure period as compared with the same period the year before:

- Bald Hill only accomplished 49% of its objective (it sold only 141 of the required 288 new Subarus) during the cure period. Not only did Bald Hill not reach those numbers, it sold 19% fewer new Subarus between December 2006 and May 2007 than it had sold during the same period in the prior year.[5]

- During the first three months of 2007, Subaru penetration in Bald Hill's AOR was the lowest among all active Subaru dealer AORs in New England; Subaru penetration in Bald Hill's AOR declined more than any other dealer in New England; and, Bald Hill experienced more "Lost Business" than any other active Subaru dealer in New England.

- Through March of 2007, Bald Hill's new Subaru sales ranked Bald Hill 44th – its lowest ranking during the course of the Agreement – among all Subaru dealers located in New England, while its AOR ranked 6th in sales potential based on total retail industry registrations.

***v. SNE Terminates Bald Hill's Subaru Dealer Agreement and Franchise.***

By letter dated June 6, 2007, SNE provided Bald Hill with a Notice of Termination of Subaru Dealer Agreement and Franchise ("Termination Notice"). In the Termination Notice, SNE advised that it was terminating Bald Hill's Subaru Dealer Agreement and franchise effective September 10, 2007. Upon termination, all rights granted to Bald Hill under the Agreement will revert to SNE. Burbank Aff. at ¶8. Both before and after SNE sent the Notice, SNE and Bald Hill representatives discussed the possibility of termination and, later, the fact of termination. Although Bald Hill advised SNE that it would oppose any effort by SNE to terminate its Agreement and Subaru franchise, Bald Hill failed to file a proceeding in any forum

[4] Bald Hill did not even employ the minimum of six (6) sales people or the New Vehicle Sales Manager it agreed to provide in the Agreement.

[5] By contrast, Bald Hill's used retail sales increased 8% between December 2006 and April 2007. Bald Hill's apparent increased focus on used retail sales, even in the face of the notice of poor performance and the need to cure its new Subaru sales deficiencies during the six-month cure period, was probably a factor in its declining new sales performance.

challenging the termination until two months after receiving the Termination Notice and when only one month remained until the termination's effective date.

Procedural History

*i.* ***The Related Federal Actions Pending in this Court.***

Nearly one month after providing the Termination Notice to Bald Hill and with termination quickly approaching, on June 29, 2007, SNE filed this action, seeking a declaratory judgment that: (i) Bald Hill materially breached its Subaru Dealer Agreement with SNE; (ii) that SNE's June 6, 2007 notice of termination of the Subaru Dealer Agreement between SNE and Bald Hill and SNE is lawful and proper; and (iii) that SNE may lawfully terminate Bald Hill's Subaru Dealer Agreement and Bald Hill's Subaru franchise effective September 10, 2007. SNE openly informed Bald Hill that it had filed suit and then met with Bald Hill to discuss potential resolution. During the parties' discussions, Bald Hill never indicated that it intended to file a separate proceeding in any forum challenging termination. When Bald Hill failed to pursue settlement discussions in a timely manner, SNE arranged to serve the Summon and Complaint; Bald Hill was served on July 17, 2007.

In the weeks that followed, SNE's counsel repeatedly contacted Bald Hill's counsel, seeking assent to a motion for an expedited Rule 16 conference in light of the fast-approaching termination date. Bald Hill's counsel did not respond until August 7, 2007, when he indicated that he was about to be out of the office. Bald Hill's counsel did not inform SNE that Bald Hill had quietly filed a proceeding with the Board several days before, a fact that SNE learned only when it received a copy of the Board complaint as an attachment to Bald Hill's Motion to Dismiss later that day. He also did not inform SNE's counsel that Bald Hill had filed a motion to stay termination and was poised to file an amended complaint with the Board the next day, facts

which Bald Hill learned only when its counsel visited the Board to obtain a copy of the file on August 8, 2007.

Bald Hill's Board filings asked the Board, among other things, to adjudicate the termination dispute, to award it attorneys' fees and costs, and, remarkably, to revoke SNE's license to sell Subarus in Rhode Island. SNE removed the Board action to this Court on August 8, 2007, pursuant to 28 U.S.C. §§1441(a) and 1446(b). The removed action is entitled *Bald Hill Realty Co. d/b/a Bald Hill Subaru v. Subaru of New England, Inc.*, Civil Action No. 2007-298-S-DLM ("Removed Action").

Given the imminence of termination, contemporaneously with the filing of this Opposition, SNE has filed a Motion for Expedited Rule 16 Scheduling Conference seeking an immediate Rule 16 conference to address: (i) consolidation of this case and the Removed Action; and (ii) an expedited schedule for a trial on the merits.

***ii. Earlier Litigation between SNE and Bald Hill.***

This is not the first time the parties have litigated this issue. The first time was in 1999, and it was resolved in favor of this Court exercising jurisdiction and not abstaining (Torres, J., presiding).

In 1999, Bald Hill sought to have the Board adjudicate earlier termination proceedings. SNE removed the Board proceeding to this Court. In the action entitled *Bald Hill Realty Co. d/b/a Bald Hill Subaru v. Subaru of New England, Inc.*, Civil Action No. 99-444 (action removed by SNE from Board) and the related action, *Subaru of New England, Inc. v. Bald Hill Realty Co. d/b/a Bald Hill Subaru*, Civil Action No. 99-466 (action filed by SNE in this Court), the Court (Torres, J.): (i) found that the Board qualified as a court within the meaning of 28 U.S.C. § 1441(a) and, therefore, that Bald Hill's 1999 Board Complaint was properly removed, and

denied Bald Hill's motion to remand; and (ii) denied Bald Hill's motion to dismiss SNE's action on abstention grounds as moot.[6]

**Argument**

## *I. SNE Has Satisfied The Amount In Controversy Requirement.*

Bald Hill does not dispute that the parties are diverse, but attempts to defeat subject matter jurisdiction by arguing that the amount in controversy requirement is not met because SNE did not, in its original complaint, assert a damages claim or allege the specific pecuniary harm that would befall it if the Court refuses to enter the requested declaration. Bald Hill's argument must be rejected because it misstates the law.

No damages claim is required and SNE need not spell out the harm it would suffer without the requested declaration to satisfy the amount in controversy requirement. "In an action for declaratory judgment, 'the amount in controversy is measured by the value of the object of the litigation.'" *Dept. of Recreation v. World Boxing Ass'n,* 942 F.2d 84, 88 (1st Cir.1991) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347-48 (1977)). *See also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 181 (1936) (if object of

[6] The parties later resolved that dispute, along with another proceeding that Bald Hill had brought against SNE (and lost) in the United States District Court in New Hampshire. Bald Hill mentions the New Hampshire litigation in its Board filings, stating that in 1999, it joined a class action case against SNE concerning an alleged illegal "option packing scheme," unreasonable performance and termination standards and other alleged misconduct and suggests that SNE sent it a termination letter in 1999 "as a result of Bald Hill joining [the] class action lawsuit against SNE." Bald Hill fails to mention that SNE prevailed fully and completely in the class action case brought by Bald Hill and others. SNE won in the trial court in *Lussier Subaru, et al v. Subaru of New England, Inc, et al*, 286 F.Supp.2d 86 (D.N.H. 2003). The trial court's judgment was affirmed on appeal by the First Circuit Court of Appeals in *Lussier Subaru, et al. v. Subaru of New England, Inc., et al*, 393 F. 3d 36 (2004). The United States Supreme Court denied *certiorari*. The dealers' complaints about alleged illegal "option packing" and related misconduct were found to be without basis in fact or law. At the conclusion of the litigation, the plaintiffs were ordered to pay SNE's costs. During the class action lawsuit, Bald Hill sought an order from the United States District Court enjoining SNE's 1999 termination notice to it, claiming that SNE was acting in a retaliatory manner when it sent the notice of termination. Termination was based upon Bald Hill's failure to seek or obtain approval of repeated secret ownership changes in violation of Bald Hill's Dealer Agreement, which was compounded by years of material false representations by Bald Hill concerning its ownership structure. The Court denied Bald Hill's request for an injunction and allowed SNE to proceed with its termination proceeding. *Lussier Subaru, et al v. Subaru of New England, Inc, et al*, 122 F. Supp. 2d 231 (D.N.H. 2000).

litigation is to be free of certain regulation, amount in controversy is the loss that would follow the enforcement of that regulation). When a declaratory judgment action concerns the effect or enforceability of a contractual right, the value of the contractual right at issue is "determinative of the value of the matter in controversy." *Empire Box Corp. of Stroudsburg v. Willard Sulzberger Motor Co.*, 104 F. Supp. 762, 766 (D.C.N.J. 1952) (in declaratory judgment action, amount in controversy met where value of challenged contract exceeded jurisdictional amount) (quotation omitted). *Compare Dept. of Recreation*, 942 F.2d at 88 (value of suit turns on the value of the right plaintiff seeks to vindicate) (citing *Hunt*, 432 U.S. at 347-48) (emphasis in original)). "[T]he court can measure the value of the relief requested from the perspective of either the plaintiff or the defendant." *International Gateway Communications, Inc. v. Communication Telesystems International, Inc.*, 922 F. Supp. 122, 125 (1996) ("The court looks to the pecuniary result to either party which the judgment would directly produce.").

SNE has not only alleged generally that the "amount in controversy exceeds $75,000, exclusive of interest and costs," Complaint ¶4, but also more specifically that "[u]pon termination, all of Bald Hill's rights in the Subaru Dealer Agreement will revert to SNE, the value of which exceeds $75,000." *Id.* Those rights are at the center of this dispute and Bald Hill does not (and could not) dispute that their value exceeds $75,000 and, therefore, SNE need not allege more to meet the amount in controversy requirement. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) ("sum claimed by the plaintiff controls if the claim is apparently made in good faith."); *Dept. of Recreation*, 942 F.2d at 88 ("Unless challenged by the opposing party or the court, a plaintiffs' general allegation that the dispute exceeds the jurisdictional amount is sufficient to support jurisdiction.") (citation omitted)).

Even if Bald Hill had challenged SNE's allegation that the contract rights at issue are worth more than $75,000 (as opposed to arguing, wrongly, that the value of contract rights are not the measure of the amount in controversy), the affidavit of SNE's Vice President Market Development, Henry J. Burbank, submitted by SNE would defeat it.[7] To overcome a challenge to the amount in controversy, SNE needs only to make allegations sufficient to indicate that "'it is not a legal certainty that the claim involves less than the jurisdictional amount.'" *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001) (quoting *Dep't of Recreation*, 942 F.2d at 88). *See also St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."). A party "may meet this burden by amending the pleadings or by submitting affidavits.'" *Spielman*, 251 F.3d at 5 (quoting *Dept. of Recreation*, 942 F.2d at 88).

As Mr. Burbank's affidavit makes clear, the rights at issue here include, among other things, the authority to operate a Subaru dealership in the largest market in Rhode Island and one of the largest markets in New England, and a license to use Subaru's trademarks and trade name, and thereby to trade on the brand recognition and goodwill SNE has developed in the market. These rights are indisputably worth more than $75,000. This is true viewed from SNE's perspective – as rights that will revert to SNE upon termination, allowing it to select and appoint a new dealership that is willing and able to perform up to the reasonable standards set for it in

[7] "In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a court must construe the complaint liberally, treat all well-pleaded facts as true, and indulge all reasonable inferences in favor of the plaintiff." *Morey v. Rhode Island*, 359 F. Supp. 2d 71, 74 (D.R.I. 2005) (citing *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996); *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995)). "'However, in ruling on a Rule 12(b)(1) motion, a court is not limited to the face of the pleadings. A court may consider any evidence it deems necessary to settle the jurisdictional question.'" *Morey*, 359 F. Supp. 2d at 74-75 (citing *Palazzolo v. Ruggiano*, 993 F. Supp. 45, 46 (D.R.I. 1998); 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.30[3] (3d ed.1997)).

Bald Hill's current AOR. It is also true viewed from Bald Hill's perspective – as rights that will be lost if the requested declaration enters, requiring Bald Hill to shut down its Subaru business and to refrain from using the Subaru trademarks and trade name, in accordance with the terms of the Agreement. *See* Burbank Aff. ¶¶ 5-9.

### *II. Dismissal Is Not Warranted Here Most Fundamentally Because There Is No Pending State Court or Administrative Proceeding.*

The cornerstone of abstention is the existence of a parallel proceeding pending in a state forum.[8] Indeed, even with the discretion afforded to Courts in the context of declaratory judgment actions, dismissal would be extraordinary in the absence of a parallel state proceeding. *See Wilton v. Seven Falls Company*, 515 U.S. 277 (1995) (addressing standard governing a district court's decision to stay an action for declaratory relief where "parallel proceedings. . . were underway in state court. . ."); *Standard Fire Ins. Co. v. Gordon*, 376 F. Supp. 2d 218, 226, 231 (D.R.I. 2005) ("[t]here is little reason to dismiss … [federal] declaratory relief actions that do not involve parallel state court proceedings"). *See also Ark Telecomm., Inc. v. State Farm Fire and Cas. Co.*, 1997 WL 355891, *2 (9th Cir. Jun. 27, 1997) ("Federal declaratory relief actions that do not involve parallel state court proceedings "lie at the 'outer boundaries' of the district court's discretion under the Declaratory Judgment Act." (quotation and citation omitted)).[9] The principles set forth in *Wilton* and its progeny are not implicated here and there is

---

[8] Bald Hill seeks dismissal or a stay. "A stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 28 (1983).

[9] While a Court retains discretion to dismiss a declaratory judgment action even where there is no parallel state proceeding, *see, e.g.*, *Wilton*, 515 U.S. at 288 ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action."), Bald Hill has offered no basis for dismissal other than an incorrect argument that the Board proceeding is a parallel state proceeding within the meaning of *Wilton*. Bald Hill asserts only that SNE filed the declaratory judgment after serving the notice of termination and thus that it did not seek forward-looking relief and thus that its "declaratory judgment claim is not the sort of claim that falls within the parameters of such claims." Bald Hill Memo at 12. Bald Hill also argues that SNE filed to "preempt" a "wrongful termination claim" by Bald Hill. *Id.* Bald Hill thus argues both that SNE filed too early and that it filed too late to be heard in this Court. Bald Hill is wrong on both counts. Although SNE did not engage in a race to the courthouse, SNE

no basis for abstention or dismissal in this case because the only relevant state proceeding, Bald Hill's later-filed proceeding before the Board, is no longer pending since SNE properly removed that proceeding to this Court on August 8, 2007.[10] Bald Hill's Motion to Dismiss should be denied for this reason alone.

### *III. Even If The State Board Proceeding Had Not Been Removed, This Court Should Exercise Jurisdiction Over This Case.*

The Court's discretion to dismiss or stay a declaratory judgment action, though broad, "is not unfettered." *Standard Fire*, 376 F. Supp. at 224 (quotation omitted). Even in the presence of a parallel state court proceeding, abstention is not a foregone conclusion. "The question for a district court presented with a suit under the Declaratory Judgment Act. . . is 'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceedings pending in the state court.'" *Id.* (quoting *Wilton*, 515 U.S. at 282) (quotation omitted)). As this Court explained in *Standard Fire*, "[w]hile the Supreme Court has declined to set forth an exclusive list of factors governing the proper exercise of this discretion, the Court has noted that the district courts should look for guidance to the scope of the pending state court proceeding, the available state court defenses, and whether the claims of all parties in interest can be settled in the state court proceeding." *Id. See also Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942) (requiring careful inquiry into "the scope of the pending state court proceeding," including such matters as "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding.").

---

filed suit seeking a declaration of the rights and obligations of the parties under the Agreement well in advance of the termination effective date to seek guidance from the Court before termination took effect. It is not even clear that there was a ripe controversy before SNE served the termination notice.

[10] Bald Hill also cannot create a state proceeding by arguing that the Removed Action should be remanded to the Board. As is discussed more fully below, this Court may not remand the Removed Proceeding to the Board where the Board patently lacks jurisdiction over the parties' dispute, among other reasons.

These factors "should not be used as a 'mechanical checklist,' but rather must be carefully balanced as they apply in a given case." *Standard Fire*, 376 F. Supp. 2d at 225 (quoting *Petricca v. FDIC*, 349 F. Supp. 2d 64, 67 (D. Mass. 2004)). "The relevant inquiry underlying these factors is whether proceeding with a declaratory judgment action will provide the much needed source of enlightenment and clarification . . . as to the precise obligations and rights flowing between [the parties], or whether it will 'result in piecemeal litigation, duplication of effort and the possibility of inconsistent results.'" *Standard Fire*, 376 F. Supp. 2d at 225 (quoting *Employers' Fire Ins. Co. v. Beals*, 24 F. Supp. 2d 212, 215 (D.R.I. 1998) (internal quotation omitted)).

Bald Hill argues that this case and the (now removed) Board proceeding are "parallel" actions governed by state law and thus that the factors set forth by the Supreme Court in *Wilton* and by this Court in *Standard Fire* require abstention. In fact, those factors weigh decidedly against abstention in this case because: (i) the Board fundamentally lacks jurisdiction to adjudicate the termination dispute or to award Bald Hill the relief it seeks; (ii) this Court is well equipped to resolve the straightforward state law issues raised by this case and there is little risk of piecemeal litigation or inconsistent results; (iii) Bald Hill's later-filed (and now removed) Board proceeding is a contrived, after-the-fact maneuver to avoid litigating in this Court and to obtain what Bald Hill perceives as a more favorable forum for itself. Bald Hill's Motion to Dismiss should be denied.

*A. The Board Proceeding Cannot Adequately Protect The Parties' Rights Because The Board Has No Jurisdiction To Adjudicate The Parties' Claims Or To Grant The Relief Bald Hill Seeks.*

Bald Hill argues that the "state administrative forum is plainly adequate to address all of the issues in this case" because the issues here and in Bald Hill's (now removed) Board proceeding are "substantially the same." Bald Hill Memo at 11. Even leaving aside the fact that

the Board proceeding has been removed, and assuming the issues raised by the two proceedings are identical, Bald Hill is simply wrong that the Board has jurisdiction to adjudicate the contract and other termination issues at stake here or to grant the relief sought by either party. In fact, there are at least three independent reasons why the Board lacks jurisdiction.

1. The Board does not have jurisdiction over Bald Hill's claims because SNE is a distributor, not a manufacturer.

The Board lacks jurisdiction over Bald Hill's complaint and amended complaint in the circumstances of this case most fundamentally because SNE is a *distributor*, not a *manufacturer*.[11] All of the provisions of Section 31-5.1 which Bald Hill alleges SNE violated impose obligations only on *manufacturers*, not on *distributors*. *See generally* R.I. Gen. Laws §§ 31-5.1-4, 31-5.1-4(d)(1), 31-5.1-4(d)(2). The Board thus has no more jurisdiction to hear Bald Hill's complaint that SNE violated these provisions than it would have to hear a complaint brought by Bald Hill against a member of the general public.

2. The Board does not have jurisdiction to adjudicate termination disputes and cannot grant Bald Hill the relief it seeks.

Although Bald Hill has attempted to manipulate its requested relief so as to fit within the Board's jurisdiction over licensing matters, the fundamental issue to be adjudicated (in the appropriate forum) is whether Bald Hill's breaches of contract justify termination of the Agreement (even assuming that SNE somehow could be regarded as a manufacturer), and the fundamental relief sought is an injunction preventing the termination of Bald Hill's Subaru

[11] SNE is a "distributor" as defined under R.I. Gen. Laws § 31-5.1-1(2) because SNE "sells or distributes any new motor vehicle to new motor vehicles dealers" in Rhode Island. SNE is not a "manufacturer" under R.I. Gen. Laws § 31-5.1-1(8) as it does not manufacture, assemble or import new motor vehicles and it is not controlled by anyone who does so. Although the 1982 decision of *Scuncio Motors, Inc. v. Subaru of New England Inc.*, 555 F. Supp. 1121, 1125 n.4 (D.R.I. 1982), commented without discussion that SNE is a "manufacturer" under the statutory definition in effect at the time, the statute has since been amended to no longer include "distributor" within the definition of "manufacturer." For that reason, the Department's regulation defining "manufacturer" to include "distributor" is invalid and inapplicable. *See F. Ronci Co. v. Narragansett Bay Water Quality Mgmt. Dist. Comm'n*, 561 A.2d 874, 881 (R.I. 1989) ("regulations ... may not alter or amend the scope of the statute").

Dealership Agreement and franchise. The normal procedural mechanism for challenging the termination of a dealer's agreement is a lawsuit in a court of law. Indeed, Section 31-5.1-13 specifically authorizes aggrieved parties to pursue such claims in a judicial forum. This historic choice of the courts as the appropriate forum for termination disputes is directly related to the underlying legislation. The one circumstance where the Board has jurisdiction over a dealer-initiated claim against its franchisor is specified in the statute. The Legislature expressly created a mechanism for a dealer to "file with the *department a protest to the establishing or relocating of the new motor vehicle dealership or adding an additional location*." 31-5.1-4.2 (emphasis added).

*In all other matters*, a dealer (or any "aggrieved" party) must file an action pursuant to R.I. Gen. Laws § 31-5.1-13 *in a judicial forum* seeking redress for the violation of the statute. The Legislature, thus, was very explicit about what type of matter a dealer could initiate before the Board. The Legislature did not provide that a terminated dealer could file with the Board a protest of termination, as opposed to a protest of a new dealership appointment. While the Legislature denoted certain kinds of conduct unlawful, including the conduct barred by 31-5.1-4(d)(1), the Legislature did not include the terminations described in that provision within the scope of the statute authorizing the Board to hear dealer protests. A dealer seeking to challenge a notice of termination must seek relief from a court, not the Board.

Even if the Board had jurisdiction over the parties' dispute, however, it is not empowered to award Bald Hill the relief requested in Bald Hill's Board filings. The Board's powers to enforce R.I. Gen. Laws § 31-5.1, one of the two statutes relied on by Bald Hill in its Board Complaint, are set forth in R.I. Gen. Laws. § 31-5.1-12. Under § 31-5.1-12, the Board's authority is limited to revoking or suspending a license; nothing in that statute authorizes the

Board to issue orders staying terminations, to issue cease and desist orders or to award attorneys' fees, as Bald Hill requests in its Board filings. Likewise, nothing in the licensing statute, R.I. Gen. Laws § 31-5, permits the Board to issue stays or cease and desist orders against a distributor. Rather, the Board may take action only to deny, suspend, or revoke a distributor's license. See R.I. Gen. Laws §§ 31-5-2.1 and 31-5-23. Indeed, the *only* provision in the statutory scheme that appears to authorize the Board to issue cease and desist orders is directed against *dealers*, not *distributors*. See R.I. Gen. Laws. § 31-5-14. *Compare Moses H. Cone*, 460 U.S. at 943-44 (denying dismissal where state court did not have ability to compel arbitration, which was the relief sought by plaintiff, but the federal court did).

3. Bald Hill does not have standing to initiate a license revocation proceeding in response to a notice of termination.

Bald Hill also cannot create jurisdiction where the Legislature did not intend for it to exist simply by including in its prayer for relief, among other things, a request that the Board take action against SNE's license. Regardless of how Bald Hill has tried to characterize its complaint, a motor vehicle dealer cannot initiate a license revocation proceeding against a distributor. Indeed, allowing dealers to trigger license revocation proceedings would convert every perceived slight that might arise in the distributor-dealer relationship into a license revocation proceeding. The Legislature recognized that the Board is not the proper forum to resolve such contractual disputes since it did not establish a protest procedure for such matters, and instead allocated them to the courts pursuant to § 31-5.1-13.[12]

*B. This Court Is Well-Equipped To Resolve The State Law Issues In This Case And There Is Little Risk Of Inconsistent Results Even If The Removed Action Is Remanded To The Board.*

[12] SNE acknowledges that the Board has jurisdiction under § 31-5.1-12 to suspend or revoke the operating licenses of dealers, distributors, and manufacturers. Such a licensing matter, however, only may be initiated *by the Board* after a proper investigation. R.I. Gen. Laws § 31-5.1-12 ("If the department deems that there has been a violation of this chapter, the department shall hold a show cause hearing for revocation or suspension...").

Bald Hill next argues that because "Rhode Island law and its statutes will govern the resolution of this dispute," this Court should step aside and allow this matter to proceed before the Board. Bald Hill Memo at 11. Even leaving aside the Board's fundamental lack of jurisdiction here, Bald Hill is mistaken when it contends that dismissal is appropriate simply because state law issues are involved in this case. The relevant inquiry is whether SNE's declaratory judgment action raises novel issues of state law at issue such that, by deciding to hear it, the Court would be "'elbowing its way . . . to render what may be an uncertain and ephemeral' interpretation of state law." *Standard Fire*, 376 F. Supp. 2d at 231 (quoting *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992) (in turn, quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 122 n.32 (1984))). That is not the situation here. Rather, the state's interest is "diminished in cases such as this one, where the state law issues are not novel, unsettled, difficult, complex, or otherwise problematic." *Id.* (quotation omitted).

The state law issues involved in this case primarily are straightforward contract issues: Did Bald Hill breach the performance and personnel provisions of the Agreement? This Court – a federal District Court sitting in the State of Rhode Island – is well-equipped to resolve these contract issues, as well as the simple statutory construction issues involved in this case. These statutory construction issues include, for example, the issue of whether statutes (R.I. Gen. Laws §§ 31-5.1-4(d)(1) and (d)(2)) which by their plain terms apply only to "manufacturers," also apply to a "distributor" like SNE, as apparently contended by Bald Hill. It is hardly a "premature interference" as Bald Hill contends (Bald Hill Memo at 3 n.1) or an extraordinary exercise for this Court to read the straightforward words of the statute and review the facts of this case to determine for itself if SNE is a "manufacturer" or "distributor" under the statute's definitions or whether Bald Hill breached the agreement. These are precisely the type of state

law issues that the federal courts routinely address in declaratory judgment actions by automobile franchisors in the context of franchise termination or non-renewal proceedings. *See, e.g., General Motors Corp. v. The New A.C. Chevrolet, Inc.*, 263 F.3d 296 (3d Cir. 2001) (affirming summary judgment for franchisor on request for declaratory judgment that franchisee had breached dealer agreement and that franchisor had "good cause" to terminate franchise); *Peugot Motors of America, Inc. v. Eastern Autos Distributors, Inc.*, 892 F.2d 355 (4th Cir. 1989) (affirming summary judgment for manufacturer on request for declaratory judgment that it properly refused to renew franchise agreement with distributor); *General Motors Corp. v. Villa Marin Chevrolet, Inc.*, 2000 WL 271965 (E.D.N.Y. Mar. 7, 2000) (entering summary judgment in favor of franchisor on claim seeking declaration that franchisor properly terminated franchisee). The District Court in Rhode Island also routinely interprets state statutes. *See, e.g.*, *Robertson Stephens, Inc. v. Chubb Corp.*, 473 F. Supp. 2d 265, 270-72 (D.R.I. 2007) (interpreting R.I.G.L. § 9-1-33(a) – insurer's refusal to pay claims); *Raymond K. Hoxsie Real Estate Trust v. Exxon Educ. Foundation*, 81 F.Supp. 2d 359, 369-370 (D.R.I. 2000) (interpreting R.I. state environmental law statute); *Huguenin v. Ponte*, 29 F.Supp.2d 57, 62-63 (D.R.I. 1998) (interpreting R.I. Gen Law § 12-721, relating to the power to arrest); *Anabell's Ice Cream Corp. v. Town of Gloucester*, 925 F. Supp. 920, 925-26 (D.R.I. 1996) (interpreting R.I. Gen. Laws. § 45-6-6, § 11-45-1, § 31-45-1, statutes on municipal ordinances and noise regulation).

Nor is there any serious risk of inconsistent determinations. The issues raised in this case are straightforward enough that there is little possibility of inconsistent results in the event that the Removed Proceeding is remanded to the Board. *See Standard Fire*, 376 F. Supp. 2d at 225, 231. *See also Burns*, 931 F.2d at 146 (First Circuit reversing dismissal of case where case

presented "a straightforward application of state negligence laws" and therefore "the possibility that harsh, contradictory or unfair consequences [would] result is slim.").

### *C. Bald Hill's Now-Removed Proceeding Before The Board Was A Reactive Tactical Move And Is A "Contrived" Attempt To Secure A More Favorable Forum.*

Finally, Bald Hill contends that SNE's federal court action is "contrived" because SNE supposedly was "strategically attempting to preempt a wrongful termination claim by Bald Hill" as a "tactical move to avoid a potentially less favorable forum." Bald Hill Memo at 12-13. Bald Hill claims that the fact that SNE filed first matters not since "[h]ere, the natural plaintiff would have been Bald Hill, not SNE, as the only potential injury will be sustained by Bald Hill, not SNE. *Id.* at 13. Bald Hill has it backwards. SNE is the true plaintiff in interest and Bald Hill – as the party that breached the Agreement – is the defendant in interest, which is precisely how the parties are aligned in this proceeding. *See Lexington Ins. Co. v. City of Phoenix*, 1996 WL 463672 (D. Mass. July 31, 1996) (declaratory judgment action initiated by party that allegedly breached contract is "contrived" since the breaching party is "natural defendant").[13] Regardless of who filed first, it is, therefore, the proceeding initiated by Bald Hill before the Board that is "contrived," for Bald Hill – the natural defendant – initiated that proceeding to create a "parallel" state proceeding in an attempt to stop SNE from pursuing litigation in this Court. *See id.*

---

[13] Bald Hill's reliance on *Lexington Ins.* is, therefore, misplaced. The other cases relied on by Bald Hill are distinguishable on their facts. *See Subaru of New England, Inc. v. Subaru of Augusta, Inc.*, 121 F.R.D. 1 (1988) (case transferred from USDC in Massachusetts to USDC in Maine; action involved actions taken in Maine regarding property in Maine and thus dispute belonged in court in Maine and the fact that SNE won the race to the courthouse did not matter since it filed suit same day it sent in termination notice and unlikely that dealer could have sued until it received the notice); *Subaru of New England, Inc. v. Lakes Subaru*, (distributor filed suit same day it notified dealer of non-renewal of franchise and, as a result, court found it was a contrived tactical move). In this case, SNE did not file suit until weeks after it issued the Termination Notice to Bald Hill and when it did so, it filed in this federal court in Bald Hill's home state. Bald Hill had plenty of time to file suit, but waited until two months later to institute a proceeding in front of the Board, a forum without jurisdiction to adjudicate this dispute. The only tactical maneuvering in this case was that of Bald Hill, seeking to create a state proceeding so it could ask this Court to abstain from hearing SNE's case. To the extent that the cases cited by Bald Hill are relevant at all, they support denial of Bald Hill's Motion to Dismiss.

SNE also gave Bald Hill ample notice, both before and after sending Bald Hill the notice of poor performance in November 2006 that it intended to terminate Bald Hill's Subaru Dealer Agreement and franchise if Bald Hill did not cure its sales deficiencies within the six-month cure period. SNE provided the Termination Notice to Bald Hill in early June 2006. Nearly another month passed before SNE filed suit in this Court, a fact which SNE openly disclosed to Bald Hill. SNE served the summons and complaint in mid-July. Yet, it was another three weeks before Bald Hill purported to initiate its Board proceeding approximately one month before the effective date of the termination, in an apparent effort to create an issue for a motion to dismiss. If any proceeding is "reactive" or "contrived," it is the Board proceeding, not this case. Bald Hill's Motion to Dismiss should be denied.

## CONCLUSION

For all of the reasons set forth above, Plaintiff Subaru of New England, Inc. respectfully requests that the Court deny the Motion to Dismiss or, in the alternative, Motion for Stay.

Respectfully submitted,

SUBARU OF NEW ENGLAND, INC.

By its attorneys,

/s/ Mitchell R. Edwards
Brent R. Canning (Attorney No. 5546)
Mitchell R. Edwards (Attorney No. 6942)
Hinckley, Allen & Snyder
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)
medwards@haslaw.com

OF COUNSEL:

Howard M. Cooper
Heidi A. Nadel
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626
Fax: (617) 227-5777
hcooper@toddweld.com
hnadel@toddweld.com
(admitted *pro hac vice*)

August 22, 2007

**CERTIFICATION**

I hereby certify that on August 22, 2007, a copy of the foregoing Memorandum in Support of Plaintiff's Opposition to Defendant Bald Hill Subaru's Motion to Dismiss or, in the alternative, Motion for Stay was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing thorough the Court's CM/ECF system.

Michael J. McEntee, Esq.
915 Tollgate Road
Warwick, RI 02886

/s/ Mitchell R. Edwards
Mitchell R. Edwards (#6942)