# Exhibit A
# to Affidavit of Henry J. Burbank

SUBARU

# Dealer Agreement

and

# Standard Provisions

**Bald Hill Realty, Co.**
**dba Bald Hill Subaru**
**Warwick, Rhode Island**
**Dealer Code 010-236**

SUBARU

**Dealer Agreement**

1 **Parties To Agreement**

THIS AGREEMENT is made as of the 1st day of April, 2004, by and between Subaru of New England, Inc., a Massachusetts corporation ("Distributor"), having a place of business at 95 Morse Street, Norwood, Massachusetts 02062, and Bald Hill Realty, Co. ("Dealer"), a Rhode Island privately-held corporation doing business or intending to do business as Bald Hill Subaru, having its principal place of business at 1021 Bald Hill Road, West Warwick, Rhode Island 02886.

2 **Standard Provisions**

The Subaru Dealer Agreement Standard Provisions effective April 1, 2000 ("Standard Provisions") is incorporated by reference as part of this Agreement with the same force and effect as if all of the definitions and provisions contained in the Standard Provisions were fully set forth in this Agreement. The conduct of business by Dealer under this Agreement is expressly subject to the Standard Provisions and all the documents referred to, or incorporated by reference in, the Standard Provisions. Dealer hereby acknowledges receipt of a copy of this Agreement and of the Standard Provisions without any addition to, or modification of, the printed text of either, except as may be set forth in any other written documents agreed upon between Distributor and Dealer, which documents are attached hereto and are identified as follows (or if none, so state below):

2.1 Subaru ZIP Structure List - March 2004

2.2 Addendum I to Subaru Dealer Agreement including Diagrams "A" and "B"

2.3 Addendum II to Subaru Dealer Agreement

2.4 Facility Addendum to Subaru Dealer Agreement

3 **Term And Renewal**

The term of this Agreement begins on the first day of April, 2004, and ends on the last day of March, 2009.

The expiration or prior termination of this Agreement shall not affect or extinguish any unsatisfied account balances between Distributor and Dealer, any claims for indemnification as set forth in the Standard Provisions, any claims asserted in legal actions or proceedings then pending and involving the parties hereto, or the respective rights and obligations of Dealer and Distributor under Article 18 of the Standard Provisions.

Any renewal of this Agreement must be formally entered into by means of a new fully executed Subaru Dealer Agreement in the then-current form, incorporating the Subaru Dealer Agreement Standard Provisions in the then-current form.

4 **Appointment and Acceptance**

Distributor hereby appoints Dealer as an authorized dealer of Subaru Products, and Dealer accepts the appointment under the terms and conditions of this Agreement.

5 **Area of Responsibility**

Dealer's Area of Responsibility, as defined in Section 2.5 of the Standard Provisions, shall consist of the United States Postal Service ZIP Code areas indicated in the attached ZIP Structure List dated March 2004 for Area of Responsibility AOR #010-301C Providence - Warwick



Distributor Initials

Dealer Initials

6 **Minimum Standards Level**

Effective for the term of this Agreement only, the Minimum Standards Level, as defined in Section 2.8 of the Standard Provisions, shall consist of:

(a) The Planning Volume ("PV"), as defined in Section 2.9 of the Standard Provisions and as calculated in accordance with Section 10.1 of the Standard Provisions, which shall be 509 Vehicles per year; and

(b) The Units in Operation ("UIO"), as defined in Section 2.10 of the Standard Provisions, which shall be 1,201; and

(c) The sum of the UIO plus the PV, which shall be 1,710; and

(d) The sum of the UIO plus three times the PV, which shall be 2,728.

The Minimum Standards Level components will be re-evaluated by Distributor, and Dealer agrees to comply with all resulting Minimum Standards if:

(a) This Agreement is renewed; or

(b) Dealer relocates all or any of its operations; or

(c) The Area of Responsibilty is reconfigured; or

(d) There is a Change of Controlling Ownership Interest.

7 **Controlling Ownership Structure**

Dealer represents and Distributor enters into this Agreement in reliance upon the representation that the following entities are Dealer's only Controlling Owners with respect to the Subaru dealership only with their respective voting ownership percentages:

| Ownership Level | Actual Percent | Control Percent | Entity Name |
|---|---|---|---|
| Owner I | 34 97% | 0.00% | Robert H. Petrarca |
| Owner II | 32 29% | 0.00% | James E. Hagan |
| Owner III | 15 03% | 100.00% | Robert G. Petrarca |
| Owner IV | 12 95% | 0.00% | Anna L. Hagan |
| Owner V | 2 38% | 0.00% | Ann Hagan Webb |
| Owner IV | 2.38% | 0.00% | Carol Hagan McEntee |

8 **Change In Controlling Ownership Or Transfer of Agreement**

This is a personal service agreement. There shall be no change in the Controlling Ownersnip of Dealer, or transfer of any rights or obligations under this Agreement, without the prior written consent of Distributor.

Distributor Initials     Dealer Initials

## 9 Investing Ownership

Dealer represents and Distributor enters into this Agreement in reliance upon the representation that the following individuals are the only investors in Dealer, with their respective approximate aggregate investment percentages:

| | | | |
|---|---|---|---|
| Investor I | 33.00% | 100.00% | Robert H. Petrarca |
| Investor II | 16.00% | 100.00% | James E. Hagan |
| Investor III | 10.00% | 100.00% | Robert G. Petrarca |
| Investor IV | 14.00% | 100.00% | Anna L. Hagan |
| Investor V | 12.00% | 100.00% | Ann Hagan Webb |
| Investor VI | 12.00% | 100.00% | Carol Hagan McEntee |
| Investor VII | 3.00% | 100.00% | Robert Hagan |

Dealer shall notify Distributor in writing within ten business days of any change in Investing Owners or their investment percentages.

## 10 Dealer Management

Dealer represents and Distributor enters into this Agreement in reliance upon the representation that the following persons, and no other persons, shall constitute the Dealer Management at the time this Agreement is executed:

| | |
|---|---|
| Executive Manager | Robert G. Petrarca |
| General Manager | Robert G. Petrarca |
| President | Robert H. Petrarca |
| Vice President | Robert G. Petrarca |
| Vice President | James E. Hagan |
| Treasurer | Robert H. Hagan |
| Secretary | Anna L. Hagan |
| Sales Manager | Kevin Lawton |
| Service Manager | Lou Soave |
| Parts Manager | Donna Bennet |

Dealer further represents that, unless otherwise indicated at the end of this sentence, any member of Dealer Management may transact business with Distributor on behalf of Dealer, and that in so doing each such person shall legally bind Dealer:

*There shall be no change in the Executive Manager or General Manager without the prior written consent of Distributor. Dealer shall notify Distributor in writing within ten business days of any other change in Dealer Management, which will, except for a change in a Department Manager, require an amendment to this Agreement.*



Distributor Initials          Dealer Initials

**11 Facilities**

Distributor has approved the following Facilities, containing the areas specified below, which Dealer will provide and use exclusively for Dealer's Subaru operations:

New Vehicle Showroom
Address: 1021 Bald Hill Road, West Warwick, Rhode Island 02886
Exclusive Subaru Area: 2,496 square feet.

Sales Work Area and Office
Address: 1021 Bald Hill Road, West Warwick, Rhode Island 02886
Exclusive Subaru Area: 468 square feet.

General Office Area
Address: 1021 Bald Hill Road, West Warwick, Rhode Island 02886
Exclusive Subaru Area: 468 square feet.

Parts Facility
Address: 1021 Bald Hill Road, West Warwick, Rhode Island 02886
Exclusive Subaru Area: 2,034 square feet.

Service Facility
Address: 1021 Bald Hill Road, West Warwick, Rhode Island 02886
Exclusive Subaru Area: 5,091 square feet.

Paved Lot
Address: 1021 Bald Hill Road, West Warwick, Rhode Island 02886
Exclusive Subaru Area: 52,443 square feet.

**12 Floor Plan Credit Line**

Dealer agrees to make arrangements for, and to maintain throughout the term of this Agreement, a committed floor plan line of credit in an amount adequate to fulfill the requirements set forth in the applicable Minimum Standards and adequate to finance Dealer's anticipated inventory of Vehicles. Dealer hereby represents that it now possesses a committed floor plan line of credit, from a financial institution approved by Distributor, available exclusively for Subaru operations, in the current required amount of $2,775,000.

**13 SOA Consent**

The consent of Distributor and Subaru of America, Inc. (SOA), is required for any of the following:

(a) Appointment of a New Dealer Candidate; or

(b) Change of Controlling Ownership Interest; or

(c) Relocation of Dealer's Subaru operations to any location other than the Facilities; or

(d) Establishment of facilities in addition to the Facilities.

SOA's and Distributor's decisions to grant or withhold consent shall be promptly communicated by Distributor to the New Dealer Candidate, the proposed transferee of the interest to be transferred, or the Dealer, as the case may be.

If a New Dealer Candidate engages in any Subaru operations prior to SOA's consent, or if a Change of Controlling Ownership Interest or a change in facility location is implemented without SOA's prior



Distributor Initials    Dealer Initials

consent, such consent may be denied notwithstanding the qualifications of the New Dealer Candidate or proposed transferee, notwithstanding the condition of the new facility, and notwithstanding any contrary representations which may have been made by Distributor.

SOA consent may also be denied in the event that SOA determines, in its sole discretion, that a precluding circumstance exists, including, but not limited to the following:

(a) The Agreement and related documents, when presented to SOA for review, are not fully and properly completed or do not conform to the requirements set forth in the then current Subaru Dealer Appointment Procedures Manual; or

(b) The New Dealer Candidate, proposed transferee or proposed new facility does not meet or fulfill the standards set forth in the then-current Subaru Dealer National Minimum Standards; or

(c) The New Dealer Candidate or proposed transferee does not evidence the honesty, integrity, sales and service energy or proven sales, market penetration and service performance, and skills, experience or cooperative attitude which are likely to promote the long term success and reputation of Subaru Products.

If applicable law requires that a New Dealer Candidate or proposed transferee be approved or disapproved within a prescribed time period, such time period shall be calculated from and after the date upon which this Agreement and all related documents are first presented for review by Distributor to SOA.

**14. Prior Termination**

Dealer may terminate this Agreement prior to the expiration date by giving at least sixty (60) days prior written notice to Distributor by certified or registered mail. Distributor may, prior to the expiration date, terminate this Agreement for cause as set forth in Article 17 of the Standard Provisions. This Agreement shall automatically terminate upon notice to Dealer of the termination, expiration or relinquishment of Distributor's authority to act as a distributor of Subaru Products for the Area of Responsibility.

15. The parties hereto, intending to be legally bound, have caused this Agreement to be executed by their proper and duly authorized representatives on the date and year first above written.

| | |
|---|---|
| Subaru of New England, Inc. | Bald Hill Realty, Inc. dba Bald Hill Subaru |
| by: | by: |
| Ernest J. Boch, Jr. President | Robert H. Petrarca President |
| by: | by: |
| Henry J. Burbank Vice President - Market Development | Robert G. Petrarca Executive Manager & General Manager |

# Subaru ZIP Structure List - March 2004

**Reg-AOR: 010-301C** **District: 04** **State: RI**

**Market Name: Providence**

**AOR Name: Warwick**

**Planning Volume 509** **Units in Operation 1,201**

| FIPS | ZIP | ZIP Name | ST | County |
|---|---|---|---|---|
| 09015 | 06373 | Oneco | CT | Windham County |
| 09015 | 06377 | Sterling | CT | Windham County |
| 44003 | 02816 | Coventry | RI | Kent County |
| 44003 | 02827 | Greene | RI | Kent County |
| 44003 | 02886 | Warwick | RI | Kent County |
| 44003 | 02887 | Warwick | RI | Kent County |
| 44003 | 02888 | Warwick | RI | Kent County |
| 44003 | 02889 | Warwick | RI | Kent County |
| 44003 | 02893 | West Warwick | RI | Kent County |
| 44007 | 02815 | Clayville | RI | Providence Coun |
| 44007 | 02823 | Fiskeville | RI | Providence Coun |
| 44007 | 02825 | Foster | RI | Providence Coun |
| 44007 | 02831 | Hope | RI | Providence Coun |
| 44007 | 02905 | Providence | RI | Providence Coun |
| 44007 | 02907 | Providence | RI | Providence Coun |
| 44007 | 02910 | Cranston | RI | Providence Coun |
| 44007 | 02919 | Johnston | RI | Providence Coun |
| 44007 | 02920 | Cranston | RI | Providence Coun |
| 44007 | 02921 | Cranston | RI | Providence Coun |

Subaru of New England, Inc.

by ____________________ By: ____________________

Warwick, Rhode island AOR



**Addendum I to Subaru Dealer Agreement**

This Addendum, executed on this first day of March, 2004, between Subaru of New England, Inc. ("SNE" or "DISTRIBUTOR") and Bald Hill Realty, Inc. d/b/a Bald Hill Subaru ("DEALER") is made part of the Subaru Dealer Agreement ("Agreement") executed between the same parties on the date of the execution hereof. Capitalized terms not specifically defined in this Addendum shall have such meaning as are set forth in the Agreement or in other documents incorporated into the Agreement.

DEALER has been advised by SNE and acknowledges that SNE's willingness to execute the Agreement with DEALER is based on DEALER'S agreement to fulfill and comply with all commitments and conditions set forth in the Agreement, including this Addendum.

The Agreement executed between DEALER and SNE incorporates by reference the Subaru Dealership Agreement Standard Provisions, and the Subaru Dealership National Minimum Standards. SNE Standards are equivalent to the National Minimum Standards referenced in the Standard Provisions, excepting only certain floor plan calculations and certain personnel commitment provisions. Collectively, the Subaru Dealership Agreement Standard Provisions, the Subaru Dealership National Minimum Standards and SNE's revisions to those standards comprise "SNE Standards," as that term is used herein.

The commitments set forth herein describe the specific actions that DEALER has agreed to undertake in order to comply with SNE Standards. The dates for completion of the commitments set forth herein constitute the last date for completion by DEALER and may be extended only in the event the DEALER receives written notice authorizing an extension signed by the President or the Vice President/Market Development of SNE. DEALER represents that DEALER has had full opportunity to consult with counsel prior to executing the Agreement, including this Addendum, and DEALER acknowledges and voluntarily agrees that the commitments set forth herein constitute negotiated and agreed upon terms of the business relationship between DEALER and SNE.

**1. Evaluation of Dealer's Performance**

DEALER acknowledges the importance of its overall performance in relation to the purposes and objectives of this Agreement. SNE will periodically evaluate DEALER'S performance of its responsibilities in the areas of sales, service, parts and customer satisfaction, based upon such reasonable criteria as SNE may establish from time to time. SNE agrees to review all such evaluations with DEALER and will provide DEALER a copy thereof. If upon evaluation of DEALER'S performance SNE determines DEALER'S performance to be unsatisfactory, DEALER agrees to take prompt action to improve its performance and, if requested by SNE, to notify SNE in writing of its detailed plans and timetables for accomplishing those improvements.

A. **SALES PERFORMANCE EVALUATION**
DEALER agrees to effectively sell Subaru Products to customers located in its Area of Responsibility. DEALER'S performance of its sales obligations, without regard to its Planning Volume, will be evaluated by SNE on the basis of such reasonable criteria as SNE may develop from time to time and communicate in advance to DEALER, including, but not limited to, those reasonable sales objectives that SNE may establish and a comparison of DEALER'S sales performance with other Subaru dealers located in the State DEALER is located or throughout New England or in other geographic areas such as DEALER'S district or in similar size markets to DEALER'S.

B. **SERVICE PERFORMANCE EVALUATION**
SNE will evaluate DEALER'S service performance in such areas as, without limitation, warranty management, compliance with the Subaru Warranty Policy and Procedures Manual, service management, service operating procedures, service staffing and training, administration, service facilities and equipment, new vehicle pre-delivery service, customer handling and customer retention.

C. **PARTS PERFORMANCE EVALUATION**
SNE will evaluate DEALER'S parts performance in such areas as, without limitation, general parts management, parts operating procedures, parts staffing and training, parts facilities, parts inventory management, parts sales, accessory sales, parts merchandising and parts availability to customers.

D. **CUSTOMER SATISFACTION PERFORMANCE EVALUATION**
SNE will evaluate DEALER'S performance of its responsibilities in the area of customer satisfaction based on the following considerations:

1. DEALER will be provided with customer satisfaction reports or such other equivalent data as will permit DEALER to assess its performance and maintain the highest level of customer satisfaction. DEALER agrees to review with its employees on a regular basis the results of the customer satisfaction reports or other data it receives.

2. DEALER agrees to develop, implement and review with SNE specific action plans for improving results in the event that DEALER is below the average customer satisfaction levels for other Subaru dealers in such areas that SNE believes are a reasonable basis for comparison. DEALER shall respond on a timely basis to requests from SNE to take action on unsatisfactory customer satisfaction matters and to commit necessary resources to remedy deficiencies reasonably specified by SNE, and DEALER shall remedy those deficiencies. SNE reserves the right to establish reasonable, uniform criteria to be used to evaluate DEALER

E **TERMINATION FOR FAILURE OF PERFORMANCE**

If upon evaluation of DEALER'S performance pursuant to paragraphs 1(A)-(D) herein, SNE concludes that DEALER has failed to perform adequately its sales, service, parts or customer satisfaction responsibilities or to provide dealership facilities which meet or exceed SNE Standards, SNE shall notify DEALER in writing of such failure(s) and will endeavor to review promptly with DEALER the nature and extent of such failure(s). DEALER will be granted a time period as may be reasonable or as required by law to correct such failure(s). If DEALER fails or refuses to correct such failure(s), or comply with any applicable law regarding a time period towards making substantial progress towards remedying such failure(s), SNE may terminate the Agreement upon such notice as may be required by law.

**2. Exclusive Facilities**

As a result of arms-length and good faith negotiations between the parties during which DEALER has had full access to independent legal advice and counsel, DEALER has agreed to conduct an exclusive Subaru dealership operation from the sales and service facility described in Paragraph 11 of the Agreement and shown on the Diagram(s) attached to this Addendum. DEALER stipulates that if its sales and service facility exceeds applicable generalized *minimum* SNE Standards for facilities, DEALER nevertheless agrees to provide these facilities exclusively for its Subaru dealership operation throughout the term of this Agreement. Alternatively, DEALER must offer to provide such other exclusive facilities which meet SNE minimum Standards and which in all events will be subject to SNE and SOA approval. DEALER acknowledges that SNE has explained to DEALER'S satisfaction the requirement that it provide exclusive facilities for its Subaru dealership operation throughout the term of this Agreement and that, after negotiation, DEALER knowingly, intelligently and voluntarily agrees to do so.

**3. Exclusive New Subaru Floor Plan Line of Credit**

A. Paragraph 12 of the Agreement sets forth DEALER'S commitment to provide a floor plan line of credit for use solely in connection with DEALER'S purchase of new Subaru vehicles. DEALER agrees to provide the initial minimum floor plan amount called for by paragraph 12 on or before the effective date of this Agreement.

B. SNE may calculate floor plan requirements for all Subaru dealers located throughout New England periodically, and this usually is done annually. The floor plan requirement is the amount necessary to maintain an inventory equivalent to an eighty (80) days supply of new Subaru vehicles. The calculation is based upon the higher of DEALER'S Planning Volume or actual prior twelve (12) months retail new Subaru sales multiplied by the then current average cost per new Subaru vehicle. That result is then rounded up to the nearest increment of $25,000. As a result of SNE's calculation, DEALER'S floor plan line of credit requirements may change during the period of this Agreement. By execution of this Addendum, DEALER agrees to increase its floor plan line of credit when SNE Standards so indicate. SNE's adoption and implementation of adjustments to its floor plan requirements will be done in accordance with paragraphs 2.6, 2.7 and 5.2 of the Standard Provisions and applied fairly and equitably to all Subaru dealers located throughout New England.

**4. Electronic Account Payment/Collection**

DEALER and SNE acknowledge that electronic drafting capabilities on dealers' accounts are a necessary, integral and indispensable component of the business relationship contemplated hereunder; that such service is offered by most major banks; and that manual drafting creates unnecessary delay, risks and administrative expense for both DEALER and SNE. Accordingly, DEALER agrees that its financial arrangements with its lender or bank shall include the capability of electronic drafting by SNE.

**5. Exclusive Personnel**

DEALER agrees to provide, in the numbers specified below, the following qualified personnel exclusively for its Subaru dealership operation throughout the term of this Agreement:

| | |
|---|---|
| 1 | General Manager (specific individual subject to SNE approval) |
| 1 | Office Manager |
| 1 | Bookkeeper |
| 1 | Clerk |
| 1 | New Vehicle Sales Manager |
| 0 | Used Vehicle Sales Manager |
| 6 | Vehicle Salespeople |
| 1 | Service Manager |
| 3 | Technicians (fully trained and certified) |
| 1 | Parts Manager |
| | One Parts Helper for every incremental $24,000 of parts and accessories sales per month |

**6. Subaru Image and Dealer Identification**

DEALER agrees to comply with the Subaru of America, Inc. ("SOA") Signature Facility National Identification Program subject to any restrictions imposed by local law and ordinance. DEALER acknowledges the elements currently include:

- Current Subaru Brand Signs
- Color Keyed Fascia
- Vertical Coronado Stone Icon Tower
- Recessed Blue Entrance Band
- Signature of Excellence Primary Showroom Kit

DEALER also agrees that if it upgrades the interior of its facility, it will use coordinated interior finishes, materials, furniture and directional signs prescribed by the Signature Facility Program or elements of like kind and quality.

7. **Exclusive Financial Statements** — DEALER agrees to maintain a separate and exclusive corporation for its Subaru dealership operation and to submit complete and accurate financial statements (balance sheet and operating statement) exclusively for its Subaru dealership operations on or before the tenth calendar day of each month. DEALER further agrees to maintain the accounting systems and practices set forth in the Subaru Dealer Accounting Manual and to comply with any applicable Distributor Directive consistent with that manual. DEALER further acknowledges and agrees that it shall include as costs and expenses on said financial statements only such items as are related to the conduct of DEALER'S Subaru operations, and DEALER will provide documentation and substantiation of such costs and expenses to SNE upon request.

8. **Exclusive Net Working Capital and Net Worth** — DEALER agrees that at all times during the term of this Agreement, DEALER shall maintain minimum capitalization levels, exclusively for its Subaru dealership operation, consistent with relevant SNE Standards applicable to DEALER'S planning volume identified in Paragraph 6 of the Agreement. As a result of SNE's Standards, DEALER'S minimum capitalization requirements may change during the period of this Agreement. By execution of this Agreement, DEALER agrees to increase its minimum capitalization levels when SNE Standards so indicate. Any revisions to the capital standards will be applied fairly and equitably to all Subaru dealers located throughout New England.

The agreed upon capitalization set forth in this Agreement is the product of negotiation and DEALER has agreed to maintain minimum capitalization levels knowingly, intelligently and voluntarily after having been given a full opportunity to consider its own business needs and abilities.

9. **Sales Data** — DEALER acknowledges that SNE from time to time discloses sales data (including, but not limited to, number of vehicles sold, type and model of vehicles sold) and composite financial data to its authorized dealers, dealer candidates, retained advisors and consultants, and SOA for the purposes of market research, analysis, performance reviews and evaluation, and for other legitimate business purposes related to the distribution, marketing and sale of Subaru Products in New England. DEALER hereby consents to disclosures by SNE of such sales, composite financial and related data as may be tendered or reported by DEALER from time to time during the term of this Agreement; provided that with respect to composite financial data, SNE shall not disclose DEALER'S identity in combination with DEALER'S specific financial results, and with respect to DEALER'S customer information, SNE shall not disclose such information except in accordance with SNE's policy of making available area of responsibility cross-sell information. SNE shall make any such disclosures solely for the purposes listed above or as otherwise provided by applicable laws.

10. **Dealer Communication System** — DEALER and SNE acknowledge and agree that DEALER'S access to SNE's computer processing and data management systems is a necessary, integral and indispensable component of the business relationship contemplated hereunder, and that DEALER can most effectively and economically provide for such access by participating in SNE's Dealer Communication System ("DCS"). Accordingly, DEALER agrees that it shall enter into or continue, and fully comply with, the provisions of a DCS Agreement with SNE setting forth those terms and conditions of participation in the system. DEALER agrees that violation of the terms of the DCS Agreement may constitute grounds for termination of the DCS Agreement as well as the Agreement and this Addendum.

11. **Miscellaneous** — The rights, obligations, understandings, agreements and commitments contained in this Addendum are for the term of this Agreement and are not intended to confer any right, benefit or claim upon any person or entity other than DEALER or SNE. Except as modified by this Addendum, all terms, conditions and provisions of the Agreement shall remain in full force and effect.

12. **Applicable Law** — To the extent that either the Agreement, this Addendum or the Standard Provisions are contrary to applicable state law, including provisions of law governing the relationship between licensed motor vehicle manufacturers or distributors and their franchisees, the laws of the state where DEALER'S Subaru dealership is located shall govern the contractual relationship between DEALER and SNE.

IN WITNESS WHEREOF, the parties have hereunto set their signatures on the date first written above

SUBARU OF NEW ENGLAND, INC

By ______________________
E/J Boch, Jr
President

By ______________________
H. J. Burbank
Vice President
Market Development

BALD HILL REALTY, INC
D/B/A BALD HILL SUBARU

By ______________________
Robert H. Petrarca
President

By ______________________
Robert G. Petrarca
Executive Manager & General Manager

REVISED 9-22-2000




480'

**ADDENDUM II TO SUBARU DEALER AGREEMENT**

This Addendum, executed as of the 1st day of March, 2004 (the "Effective Date"), between the Distributor, Subaru of New England, Inc. ("SNE"), and Bald Hill Realty Inc d/b/a Bald Hill Subaru ("DEALER"), on behalf of themselves and their present and former officers, directors and shareholders, is made part of the Subaru Dealer Agreement ("Agreement") executed between SNE and DEALER on the date of the execution thereof and shall supercede any provision of the Agreement, or any Addendum thereto, which is contrary to or inconsistent with the provisions of this Addendum II.

WHEREAS, SNE issued a Notice of Termination to DEALER dated June 25, 1999 which alleged, among other things, that DEALER failed to obtain appropriate consent to certain ownership changes.

WHEREAS, DEALER brought an action against SNE in the Rhode Island Dealers' License Regulation Office which was removed to the United States District Court for the District of Rhode Island in an action captioned Bald Hill Realty Co. d/b/a Bald Hill Subaru v. Subaru of New England, Inc., C.A. No. 99-0466 (the "Action").

WHEREAS, SNE commenced a Complaint for Declaratory Relief in the United States District Court for the District of Rhode Island in an action captioned Subaru of New England, Inc. v. Bald Hill Realty Co. d/b/a Bald Hill Subaru, Civil Action No. 99-0444 (also referred to as the "Action")

WHEREAS, both Actions were dismissed without prejudice and the parties' rights with respect to the Notice of Termination were stayed and tolled for a period of time (the "Tolling Period") pursuant to a February 10, 2000 agreement between the parties, which has now expired

WHEREAS, SNE has informed DEALER of its intention to pursue the Notice of Termination now that the Tolling Period has expired.

WHEREAS, DEALER in light of SNE's notice of its intention to pursue the Notice of Termination, has informed SNE of its intention to pursue its causes of action against SNE for wrongful termination of the franchise agreement

WHEREAS, SNE and DEALER are also adverse parties to certain other litigation encaptioned Lussier, et al. v. Subaru of New England, Inc., et al., Civil Action No. 99-109-B (U.S.D.C., NH), which has been dismissed in the trial court in SNE's favor and is now on appeal to the United States Court of Appeals for the First Circuit.

WHEREAS, SNE and DEALER have each asked the other to consider a negotiated, mutually acceptable resolution to all actions mentioned above which would include, among other things, SNE approving certain additional ownership changes as requested by DEALER and the parties entering into the Agreement.

Now, therefore, in consideration of the provisions of this Addendum II, the Agreement, SNE's approval of DEALER'S newly proposed ownership changes and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, SNE and DEALER, on behalf of, with respect to and for the benefit of themselves and their respective present and former officers, directors and shareholders, agree that each shall and does as of the Effective Date fully and forever waive, release and discharge the other(s) from and against any and all actions, lawsuits, complaints, claims, counterclaims, obligations or costs whatsoever, including, without limitation, all lawsuits mentioned above, all matters arising from or related to DEALER'S operations as a franchised Subaru dealer at any time pursuant to any dealer agreement, the franchise relationship which obtained thereunder, and any damages which either party might otherwise claim against the other under applicable state or federal laws or statutes affecting motor vehicle dealers' rights or obligations or under any other theory whatsoever. The effect of this paragraph shall be to effect a full, mutual and complete release of any and all rights and claims the parties may have against each other based upon any acts or omissions from the beginning of the world to the Effective Date, except for the obligations set forth in this Addendum II and all other provisions of the Agreement.

SNE and DEALER represent and acknowledge the following: that they are entering into this Addendum II after receiving the advice of legal counsel to the extent that they desire to consult with legal counsel; that they are entering into this Addendum II so as to obtain the benefits provided to them hereunder and to resolve and avoid the legal actions mentioned above; that they are entering into this Addendum II voluntarily; and that they are entering into this Addendum II with the full acknowledgment that they are entitled to bring, or defend against, all actions mentioned above, if they had so chosen, that no party has done anything to interfere with any right to do so, and that this Addendum II is the product of a negotiated resolution of disputes between the parties.

SNE and DEALER further represent and agree that if at any time in the future either party takes or attempts to take the position that this Addendum II, or any related document, was not the product of negotiation, is not enforceable and/or was not voluntarily entered into, then the party taking such a position shall fully and completely, to the maximum extent permitted by law, indemnify the other party for any and all cost(s), including without limitation attorneys fees, incurred by the other party in connection with any effort to enforce this Addendum II or the release provisions contained herein .

SNE and DEALER each represent that it is duly authorized to execute this Addendum II, and to enter into the release described herein, that no undertaking or obligation contained herein conflicts with any contracts or obligations to which it is a party, that it is the current and exclusive owner of all claims which it releases herein, that it has not assigned or otherwise transferred to any person or entity any of the claims, obligations, or rights which it releases herein, and that no other person may assert any claim or right released herein or any claim based on or derived from any claim or right released herein.

IN WITNESS WHEREOF, the parties have hereunto set their signatures as of the date first written above

SUBARU OF NEW ENGLAND, INC.

By: ____________________
Ernest A. Boch
President

By: ____________________
H J Burbank
Vice President
Market Development

BALD HILL REALTY CO D/B/A
BALD HILL SUBARU

By: ____________________
Robert H. Petrarca
President

By: ____________________
Robert G. Petrarca
Executive Manager and Vice President

By: ____________________
James E. Hagan
Vice President

By: ____________________
Robert H. Hagan
Treasurer

By: ____________________
Anna L. Hagan
Secretary

**FACILITY ADDENDUM TO SUBARU DEALER AGREEMENT**

This Addendum is made as of the first day of March 2004 by and between Bald Hill Realty, Inc. d/b/a Bald Hill Subaru ("Dealer") and **Subaru of New England, Inc.** ("Distributor").

WHEREAS, Dealer's Subaru Dealer Agreement and Standard Provisions ("Agreement") commenced on January 1, 2004 which Agreement is incorporated herein by reference as though set forth at length;

WHEREAS, Dealer's facilities at 1021 Bald Hill Road, Warwick, Rhode Island 02886 fails to meet the Subaru Signature Facility Program requirements agreed to by Dealer and incorporated by reference into the Agreement;

**NOW THEREFORE in consideration of these premises,** Dealer agrees to complete renovations in order to ensure its facility complies with all of the exterior elements of the Signature Facility Program consistent with the Infrastructure deliverable on or before June 30, 2004:

Current Subaru Brand Signs
- Pylon Brand Sign
- Used Car Sign
- Parts and Service Signs
- Channel letters on the face of the building spelling "SUBARU" and the name of the dealership as well as the star cluster logo

Color Keyed Fascia
- Beige Dryvit

Vertical Coronado Stone Icon Tower
- Star Cluster Logo is mounted on the tower

Recessed Subaru Blue Entrance Band

This Addendum is not intended to confer any right, benefit or claim upon any person or entity other than Dealer or Distributor.

Except as modified by this Addendum, all terms, conditions and provisions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have hereunto set their signatures on the date first written above.

SUBARU OF NEW ENGLAND, INC.

By [signature]
H. J. Burbank
Vice President
Market Development

BALD HILL REALTY, INC.
D/B/A BALD HILL SUBARU

By [signature]
Robert H. Petrarca
President

By [signature]
Robert G. Petrarca
Executive Manager & General Manager

## AMENDMENT TO SUBARU DEALERSHIP AGREEMENT

This Amendment modifies the following provisions of the Subaru Dealership Agreement ("Agreement") executed April 1, 2004, between Subaru of New England, Inc. ("SNE") and Bald Hill Realty, Co. d/b/a Bald Hill Subaru ("Dealer") and is made part of that Agreement:

**Paragraph 7 Controlling Ownership Structure**

Dealer represents and Distributor enters into this Agreement in reliance upon the representation that the following entities are Dealer's only Controlling Owners with respect to the Subaru dealership only, with their respective voting ownership percentages:

| Ownership Level | Actual Percent | Control Percent | Entity Name |
|---|---|---|---|
| Owner I | 37.06% | 0.00% | James E. Hagan |
| Owner II | 34.97% | 0.00% | Robert H. Petrarca |
| Owner III | 15.03% | 100% | Robert G. Petrarca |
| Owner IV | 6.47% | 0.00% | Ann Hagan Webb |
| Owner V | 6.47% | 0.00% | Carol Hagan McEntee |

No other provisions of the Agreement are modified by this Amendment and they remain in full force and effect.

Subaru of New England, Inc.

[signature] 3/15/07

Henry J. Burbank
Vice President
Market Development

Date

Bald Hill Subaru

[signature] 3/13/07

Robert G. Petrarca
Executive Manager

Date